WM. E. HUGHES ET AL. V. STATE OF TEXAS ET AL.

Decided October 28, 1909.

**1.—Boundary—Evidence.**

The footsteps of the original surveyor, when they can be found and identified on the ground, will determine the true boundaries of the land surveyed by him; and in case of conflicting calls that line will be adopted which follows his course.

**2.—Same—Excess in Area.**

A land certificate was located upon a peninsular shaped body of land formed by a bend in a water course; the plaintiffs contended that the calls for course and distance in the patent should control in determining the boundaries of the grant; the defendants contended that the water line of the adjacent water course should control; in the one case, the calls for course and distance did not conform to the shape of the peninsula; and in the other, the grant would contain a large excess. Held, the fact that the boundaries when fixed by course and distance contained the area designated in the patent, and the further fact that by making the water lines the lines of the grant, a large excess in acreage would be granted, were sufficient to support a verdict for the plaintiffs.

Appeal from the District Court of Harrison County. Tried below before Hon. W. C. Buford.

*W. E. Hughes, F. H. Prendergast, W. C. Lane* and *J. A. Templeton,* for appellants.—Under the evidence in this case it was the duty

of the trial judge to construe the field notes of the James Adams survey and to instruct the jury that the calls in the field notes of said survey to run with the waters of the lake, from the beginning corner thereof to the end of the nineteenth call in such field notes, were superior to and would control the conflicting calls for course and distance, and that the waters of the lake adjacent to such calls constituted the true boundaries of said survey. The refusal of the court to so instruct the jury constitutes reversible error. Cook v. Dennis, 61 Texas, 249; Ivey v. Williams, 78 Texas, 687; Beaumont Pasture Co. v. Cleveland, 26 S. W., 93; Gulf, C. & S. F. Ry. Co. v. Malone, 25 S. W., 1077; Huff v. Crawford, 89 Texas, 214; St. Clair County v. Lovingston, 23 Wall., 63.

Calls in the field notes of a survey for natural objects, such as rivers, lakes, etc., will, as a matter of law, control conflicting calls for course and distance, unless it is made to appear that the calls for such natural objects were made by the locating surveyor under the mistaken belief that same were located on the ground as indicated by his calls for course and distance, when in fact such natural objects are located elsewhere, and the burden of proving such mistake is on the party who seeks to make the calls for course and distance control the conflicting calls for such natural objects. Stafford v. King, 30 Texas, 272, and 273; Galveston County v. Tankersley, 39 Texas, 658-60; Urquhart v. Burleson, 6 Texas, 503; Anderson v. Stamps, 19 Texas, 460; Robertson v. Mosson, 26 Texas, 248; Booth v. Strippleman, 26 Texas, 441.

In this case the burden of proof was on the plaintiff to prove by a preponderance of the evidence that the locating surveyor who located the Adams survey in calling to run with the waters of the lake from the beginning corner of the survey to the end of the nineteenth call in his field notes, made such calls under the mistaken belief that his calls for course and distance would coincide, run with and follow the waters of the lake, when in fact such waters were not where the surveyor then supposed them to be, and such calls for course and distance would not follow but would conflict with the calls for the lake as the waters then stood, and that it was the intention of the locating surveyor to make the calls for course and distance, rather than the calls for the waters of the lake, the boundaries of the survey. The plaintiff failed to discharge such burden, and the court should have instructed the jury to return a verdict against them. Clark v. Hills, 67 Texas, 141; Waggoner v. Daniels, 18 Texas Civ. App., 235; Allen v. Worsham, 49 S. W., 525; Byers v. Wallace, 87 Texas, 508.

The identity of the land covered and appropriated by the field notes of the survey must be determined by a reasonable construction of the language used in the field notes of and patent to the survey when read in the light of surrounding circumstances, keeping in view the fact that the ultimate object and purpose of such construction is to arrive at and give effect to the purpose and intention of the locating survey as expressed in his field notes. Stafford v. King, 30 Texas, 271 to 273; Welder v. Carroll, 29 Texas, 318; Huff v. Crawford, 89 Texas, 214; Lilly v. Blum, 70 Texas, 711; Anderson v. Stamps, 19 Texas, 464 and 465.

By the term "purpose and intention of the locating surveyor," as

used in the decisions, is meant, not that purpose and intention which exists only in his mind; but it means his purpose and intention as deduced from what he did in making the survey, and as expressed in and gathered from the language of the field notes as set out in the grant. Urquhart v. Burleson, 6 Texas, 503; Blackwell v. Coleman County, 94 Texas, 220; Huff v. Crawford, 89 Texas, 214.

The terms "footsteps of the locating surveyor" as same is used in the decisions mean his footsteps as indicated by and described in his field notes as marking and constituting the boundaries of his survey. Such term does not mean preliminary lines run or marks made by him or under his direction while he is locating the survey, which lines or marks are not called for in his field notes. Ratliff v. Burleson, 7 Texas Civ. App., 621; Schaeffer v. Berry, 62 Texas, 714; Reast v. Donald, 84 Texas, 648; Davidson v. Pickard, 56 S. W., 608.

In cases of this character where a survey is situated on a peninsula bordering on a lake or a navigable stream, the meander lines of such survey, though run on the ground by the surveyor, will not control conflicting calls for the waters of such lake or stream, unless it is affirmatively shown that such was the intention of the locating surveyor. Such intention will not be presumed, but must be proved affirmatively by the party asserting such fact. This is true, since in such cases meander lines are usually run in surveying fractional portions of the public lands bordering upon navigable waters, not as boundaries of the tract, but for the purpose of defining the sinuosities of the banks of the stream or the shore-line of the watercourse and as a means of ascertaining the quantity of the land in the fraction subject to sale, and which is to be paid for by the purchaser. Bland v. Smith, 26 S. W., 773, same case, 43 S. W., 49; Denny v. Cotton, 3 Texas Civ. App., 634; St. Paul & P. Ry. Co. v. Schurmeir, 7 Wall., 272, 290, 74 U. S., 19, 78; Jefferis v. East Omaha Land Co., 134 U. S., 178-198; Hardin v. Jordan, 140 U. S., 371-406; Mitchell v. Smale, 140 U. S., 406; St. Clair County v. Lovingston, 23 Wall., 46; Wallace v. Driver, 33 S. W., 641, 643; Fuller v. Shedd, 161 Ill., 462, 62 Am. St., 380; Schulte v. Warren, 75 N. W., 783; note to Allen v. Weber, 27 Am. St., 56 to 63, collating authorities on this subject.

Long acquiescence by the Republic and State, in the assertion and claim by the grantees of the Adams grant and their assigns, that the waters of the lake constitute the true boundaries of said grant, and that such grant covered and appropriated all of the land on that peninsula north of the marked base line thereof, should be held to conclude the State and those claiming under it by subsequent grants from now questioning the construction so heretofore placed on the field notes of such grant. Louisiana v. Mississippi, 202 U. S., 54, 56; Virginia v. Tennessee, 148 U. S., 523; United States v. Texas, 162 U. S., 1; Stone v. United States, 69 U. S., 525; James v. Germania Iron Co., 107 Fed., 618; Galveston v. Menard, 23 Texas, 396.

The excess in the acreage of the James Adams survey was immaterial and irrelevant to any issue in the case, and should not have been considered by the jury for any purpose other than to assist them in determining the true location of the disputed lines of said survey as originally located, and the jury should have been so instructed and

that they should not consider such excess for any other purpose. The refusal of the instruction in question was reversible error. Brown v. Galveston Wharf Co., 48 S. W., 41; Maddox v. Fenner, 79 Texas, 279, 292; Corrigan v. State, 42 Texas Civ. App., 171; Waggoner v. Daniels, 18 Texas Civ. App., 235; Fuller v. Shedd, 52 Am. St., 389 and 390.

The burden of proof was on the plaintiff to prove by a preponderance of the evidence that the true boundaries of the James Adams survey were located by the locating surveyor in accordance with the calls in the field notes of said survey for course and distance as claimed by the plaintiffs, and if they failed to discharge such burden the finding of the jury should have been against them on such issue, and the court should have so instructed the jury. The refusal of the court so to do constitutes reversible error. Clark v. Hills, 67 Texas, 150; Byers v. Wallace, 87 Texas, 508 and 509; Waggoner v. Daniels, 18 Texas Civ. App., 235; Allen v. Worsham, 49 S. W., 525.

*R. V. Davidson,* Attorney-General, · *William E. Hawkins,* Assistant Attorney-General, for appellee, the State of Texas.—It is not permissible for a locating surveyor to project a survey across a navigable stream; and the Act of December 14, 1837, which is still in force, declares that "all streams, so far as they retain an average width of thirty feet, shall be considered navigable streams within the meaning hereof, and they shall not be crossed by lines of any survey." Paschal's Digest, 4529; Rev. Stats., art. 4147.

It is the duty of the locating surveyor to actually survey the land upon the ground and mark same. The presumption of law is that he did so. Morgan v. Mowles, 61 S. W., 256; Maddox v. Fenner, 79 Texas, 291; Gerald v. Freeman, 68 Texas, 204; Booth v. Strippleman, 26 Texas, 441; Stafford v. King, 30 Texas, 257; Griffin v. Barbee, 29 Texas Civ. App., 325; Wiley v. Linley, 76 S. W., 208; Phillips v. Ayres, 45 Texas, 601.

The number or relative position of any call in the field notes or in the patent or upon the ground, is immaterial, no call of a survey having any dignity or importance over any other call merely because it is the first call, or the last call, or because it comes before or after any other call. Booth v. Upshur, 26 Texas, 70; Cox v. Finks, 41 S. W., 98; Clark v. Hills, 67 Texas, 152.

In reconstructing a survey effort should be made to ascertain the intention of the original surveyor who located the survey. Robinson v. Doss, 53 Texas, 506; Hubert v. Bartlett, 9 Texas, 103; Anderson v. Stamps, 19 Texas, 465; Swisher v. Grumbles, 18 Texas, 177.

That intention, however, must be determined by the field notes and plat made by the surveyor considered in connection with his work on the ground, if such work can be found; and no mere supposition or conjecture as to what the surveyor had in mind can be indulged or treated or considered as of any force or effect. Bartlett v. Hubert, 21 Texas, 21; Booth v. Upshur, 26 Texas, 70; Booth v. Strippleman, 26 Texas, 441; Robinson v. Doss, 53 Texas, 506.

The cardinal rule, the one to which all other rules converge, and into which all other rules blend, and to which all other rules must

yield, is to follow the footsteps of the surveyor on the ground. New York & Texas L. Co. v. Thompson, 83 Texas, 169; Sanborn v. Gunter, 17 S. W., 120, 121; Hamilton v. Blackburn, 43 Texas Civ. App., 153; Oliver v. Mahoney, 61 Texas, 612; Wiley v. Lindley, 76 S. W., 209; Stafford v. King, 30 Texas, 269; Booth v. Strippleman, 26 Texas, 441; Fulton v. Frandolig, 63 Texas, 330; Jackel v. Reiman, 78 Texas, 588; Morgan v. Mowles, 61 S. W., 156; Phillips v. Ayres, 54 Texas, 602; Robinson v. Doss, 53 Texas, 506; Bartlett v. Hubert, 21 Texas, 21; Booth v. Upshur, 26 Texas, 70; Bolton v. Lann, 16 Texas, 112; George v. Thomas, 16 Texas, 88; Anderson v. Stamps, 19 Texas, 465; Bland v. Smith, 26 S. W., 773; Bland v. Smith, 43 S. W., 49; Lutcher & Moore L. Co. v. Hart, 26 S. W., 94.

No error by the Commissioner of the General Land Office or by any of his employes in construing the effect and meaning of the original field notes, or of the original plat, or of the original field notes and plat of a survey returned by the locating surveyor, or in platting such survey upon a General Land Office map, is binding upon the State of Texas, and in such instances estoppel does not lie against the State. Constitution of Texas, art. 7, sec. 2; Act of February 23, 1900; adjusting the account of the State with the public school fund; Day L. & C. Co. v. State, 68 Texas, 553; Brown v. Sneed, 77 Texas, 474 (reviewing Governor v. Allbright, 21 Texas, 753, Governor v. Burnett, 27 Texas, 36, State v. Purcell, 16 Texas, 310); Sullivan v. State, 41 Texas Civ. App., 89; Mound Oil Co. v. Terrell, 99 Texas, 625; State v. Brewer, 64 Ala., 287; Pulaski County v. State, 42 Ark., 118; Dement v. Rokker, 126 Ill., 174; 19 N. E., 33; Indiana Cent. C. Co. v. State, 53 Ind., 575; State v. Dubuclet, 23 La. Ann., 267; Salem Imp. Co. v. McCourt, 26 Ore., 93, 41 Pac., 1105; Grunert v. Spalding, 78 N. W., 606; Filor v. United States, 9 Wall., 45; Lake Superior S. C. Co. v. Cunningham, 44 Fed., 819; United States v. Willamette V. W. R. Co., 54 Fed., 807; Bannock v. Bell, 101 Am. St., 166, and authorities there cited.

The State is not bound by the acquiescence of its own officers or of the Republic of Texas in the assertion by an individual of an illegal claim to or possession of public lands, or by both such claim and possession. State v. Sullivan, 41 Texas Civ. App., 89; Smith v. Power, 23 Texas, 35; Zepeda v. Hoffman, 31 Texas Civ. App., 312; Brown v. Sneed, 77 Texas, 474; Truehart v. Babcock, 49 Texas, 258; Bannock Co. v. Bell, 101 Am. St., 166, and authorities there cited.

The lines called for by course and distance in the original field notes of the James Adams survey can not be held to be mere meander lines which were run, not as boundaries of the grant, but for the purpose of defining the sinuosities of Caddo Lake and as a means of ascertaining the quantity of land appropriated by the survey.

The fact that the calls for course and distance as set out in the original field notes and plat of a survey include the particular area of land called for may be considered in determining whether such calls for course and distance were intended by the locating surveyor to define the boundaries of the grant. Oliver v. Mahoney, 61 Texas, 612.

*Word & Charlton,* for appellee Thorn.

*L. P. Wilson,* for appellee Jennings.

*S. P. Jones,* for appellee Key.

HODGES, ASSOCIATE JUSTICE.—This action was instituted by the State of Texas, together with A. P. Hope, Oscar Hope and W. F. English, against Wm. E. Hughes and Annie S. Kennedy, for the purpose of fixing and defining on the ground the lines of the James Adams survey. The issues presented by the pleadings of the parties make this strictly a boundary suit. The Adams survey was made in 1838 and patent issued in 1842. It was located upon a peninsula formed by a bend in Cypress Bayou, which on the east side broadens into what is called Caddo Lake. The following diagram will show its location and the lines in dispute:

The field notes of the survey as made by the locating surveyor are as follows:

"Beginning at the N. E. corner of a survey made for Obadiah Hendrick, which survey included Taylor's Bluff on Soda Lake, or Ferry

Lake, a stake from which a pine 22 in. dia. brs. N. 35 E. 2 vrs. dist. and a pine 20 in. dia. brs. S. 45 E. 3 vrs. dist., both marked J. A.; thence running with the waters of the lake (1) N. 63 E. 840 vrs.; (2) N. 16 E. 950 vrs.; (3) N. 24 E. 750 vrs.; (4) N. 17 W. 900 vrs.; (5) N. 231½ E. 1,580 vrs.; (6) N. 35 E. 1,130 vrs.; (7) East 880 vrs.; (8) S. 25 E. 950 vrs.; (9) S. 31 E. 982 vrs.; (10). S. 36 W. 400 vrs.; (11) S. 47 W. 415 vrs.; (12) .S. 41 E. 2,135 vrs.; (13) N. 74 W. 960 vrs.; (14) N. 23 W. 920 vrs.; (15) S. 9°/27' W. 516 vrs.; (16) S. 33 W. 1,210 vrs.; (17) S. 23 W. 1,160 vrs.; (18) S. 58 E. 410 vrs.; (19) S. 60 E. 920 vrs. Leaves the lake, a stake from which a sweet gum 12 in. dia. brs. E. 101½ vrs. off and a sweet gum 12 in. dia. brs. N. 73 E. 11 vrs. off; thence S. 55 W. on a conditional line with Martin at 586 vrs. Martin's conditional corner at 836 vrs. a stake from which a black jack 8 in. dia. brs. N. 75 E. 5 vrs. off; thence (21) N. 65 W. 3,790 vrs. to the beginning corner."

The lines indicated on the diagram are run according to the calls for course and distance. The facts show that both the beginning corner and the corner at the end of the nineteenth call are some distance from the water line of the lake or bayou. It is also shown that the calls for course and distance do not conform to the configuration of the banks of the lake or the water line. The appellees contend that the true boundary should be the lines made by course and distance; while the appellants claim that the water line of the lake should govern from the beginning corner at the southwest to the corner at the end of the nineteenth call at the southeast, and thence along the south line.

The case was submitted in the court below upon special issues, and upon the answers returned the court entered judgment in favor of the plaintiffs in the suit. There are numerous assignments of error accompanied by a voluminous record, and we have given the case much careful consideration. The principal issues of fact, the location of the lines run upon the ground by the surveyor, having been found by the jury in favor of the contention of the appellees, we think the court correctly entered a judgment in their favor. When the footsteps of the surveyor can be found and identified on the ground this will determine the true boundary, and in conflicting calls that line will be adopted which follows his course. (Fulton v. Fandolig, 63 Texas, 331; Hamilton v. Blackburn, 43 Texas Civ. App., 153; Oliver v. Mahoney, 61 Texas, 612; Booth v. Strippleman, 26 Texas, 440; Maddox v. Fenner, 79 Texas, 292.)

Some of the assignments point out rulings which we think were erroneous, but not such as would justify a reversal of the case.

The testimony shows that by the judgment rendered the ·claimants under the Adams patent got the full quantum of land they were entitled to under the certificate by virtue of which the survey was made. Only a portion of the lands called for in the original Adams certificate was located upon the tract in question. The lines run according to course and distance, as shown on the diagram, embrace an area fully equal to what the locating surveyor's estimate showed he intended to locate at that place. The jury found that the land contained within the calls for course and distance amounted to 2,678 acres. This was

practically the same as that found in the estimate of the surveyor. If the water line or banks of the lake and bayou be taken as the boundary, as contended for by the appellants, there would be an excess in this survey of about 1,700 acres. This, it would seem, would furnish strong evidence to support the judgment rendered. The number of acres included within the lines run according to course and distance, added to that which was subsequently located elsewhere, equal the number called for in the certificate.

No useful purpose could be subserved by an extended discussion of the questions presented in the briefs of the appellants. The judgment of the court is affirmed.

*Affirmed.*

Application for writ of error dismissed for want of jurisdiction.